UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>POGOS TATARYAN<br><br>Defendant. | Case No. 17-cr-00564-WHO-1<br><br>**ORDER DENYING POGOS TATARYAN'S MOTION FOR REDUCTION IN SENTENCE**<br><br>Re: Dkt. No. 222 |

Defendant Pogos Tataryan moves for release under 18 U.S.C. § 3582(c)(1)(A)(i) to reduce the term of his imprisonment because his worsening health and the on-going pandemic are extraordinary and compelling reasons to do so. I accept his argument that his age and comorbidities place him at heightened risk of severe illness should he contract COVID-19, and that incarceration amplifies that concern. I agree that no one can predict with accuracy what the state of the pandemic will be in June or September in the country at large, within the Bureau of Prisons, or at FCI La Tuna, where he has been designated. As I indicated at sentencing, I do not believe at this point that he is a danger to the community. And I am sorry to learn of his brother-in-law's death and his father's declining health.

While scientists and doctors continue to learn about COVID-19 and the effectiveness of vaccines, it seems apparent that the threat of severe illness from COVID-19 is reduced by vaccination, both individually and globally, and that the vaccination rates will continue to improve substantially in the United States over the next two months given the reported availability of the vaccine and vaccination sites. One would think that this positive development would reach the Bureau of Prisons and FCI La Tuna. I do not know how mitigating those factors will be in the future, but because I am not requiring Mr. Tataryan to surrender when there is a substantial risk

1 that he could contract COVID-19 in prison, I can set them aside when addressing this motion.

2 Instead, I will focus on the factors set forth in 18 U.S.C. § 3553(a), as 18 U.S.C. §

3 3582(c)(1)(A)(i) requires me to do, to consider whether there are extraordinary and compelling

4 reasons to reduce Mr. Tataryan's sentence.

5     To begin this analysis, I note two things. First, I articulated the section 3553(a) factors in

6 Mr. Tataryan's situation just nine months ago at sentencing. While the arguments Mr. Tataryan

7 makes with this motion are updated with current events, their core is the same. Of course, I did

8 not know nine months ago how the virus would spread or how virulent the variants would be, but I

9 was under no illusion that the virus would suddenly disappear. That is why I delayed Mr.

10 Tataryan's surrender date at sentencing and volunteered to extend it if necessary. Dkt. No. 208, p.

11 22. Second, because of the delay in his surrender date, Mr. Tataryan has not served any time since

12 I handed down the sentence.

13     When I considered the section 3553(a) factors before, I recognized, as Mr. Tataryan argued

14 then, that prison was less safe an environment than his home for someone with his health issues,

15 that his medical care would not be as good in prison as at home, and that he played an important

16 role in taking care of his parents. All of that is still true. I weighed those sympathetic facts and

17 others against the corrupt nature of the charge to which he pleaded guilty. He was one of three

18 principals in a conspiracy to pay health care kickbacks over a period of more than eight years in an

19 amount of $410,078. Dkt. No. 99, p.3. I indicated at sentencing that general deterrence is a factor

20 that I consider more weighty in white collar criminal cases born out of a defendant's choice and

21 greed than in other cases.

22     At sentencing, his lawyer asked for home detention instead of incarceration for the same

23 fundamental reasons Mr. Tataryan advances now. After hearing his lawyer out, I underscored my

24 concern: "And I know that you're not trying to underplay the corrupt nature of what was going on

25 for almost eight years and that choice that your client made… is what I'm sentencing. It's what he

26 pled to, and it's what I'm sentencing." Dkt. No. 208, p. 20. In light of the section 3553(a) factors,

27 I varied downward from the Guidelines because of the sympathetic facts I identified but still

28 sentenced Mr. Tataryan to a year and a day in prison. I did not think that home detention was

sufficient in light of the offense. My perspective is unchanged.

Despite the sympathetic facts advanced in this motion, they are not compelling. A reduced sentence would not comply with the purposes of sentencing, including particularly the need for the sentence of Mr. Tataryan to reflect the seriousness of his crime, promote respect for the law, and provide just punishment for his offense. Nor would it deter future crime of others. Accordingly, Mr. Tataryan's motion is denied.[1]

If Mr. Tataryan asks to delay his surrender date to September 1 or another date prior to that, I will grant his request. If, in August, he remains concerned about the impact on his health of COVID-19 at FCI La Tuna, I will consider a further delay. This Order is without prejudice to his seeking compassionate release from the warden of FCI La Tuna once he surrenders if the Bureau of Prisons is unable to adequately address his medical or pandemic-related concerns.

**IT IS SO ORDERED.**

Dated: April 8, 2021

William H. Orrick
United States District Judge

---

[1] The hearing set for April 15, 2021 is VACATED.

3